**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 12/6/96**

**TENTH CIRCUIT**

_____

COMMITTEE TO SAVE THE RIO HONDO,

    Plaintiff-Appellant,

v.

LEONARD LUCERO, Carson National Forest
Supervisor, United States Department of
Agriculture Forest Service,

    Defendant-Appellee.

TAOS SKI VALLEY, INC.,

    Defendant-Intervenor-Appellee.

No. 95-2274

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-94-589-JC/DJS)**

_____

Steven Sugarman (Eric Ames, Taos, New Mexico, with him on the briefs), Santa
Fe, New Mexico, for Plaintiff-Appellant.

John A. Mitchell of Mitchell and Mitchell, Santa Fe, New Mexico, for Defendant-
Intervenor-Appellee.

_____

Before **BRORBY, RONEY**[*] and **LOGAN,** Circuit Judges.
**BRORBY**, Circuit Judge.

_____

    [*] The Honorable Paul H. Roney, Senior Circuit Judge for the Eleventh
Circuit, sitting by designation.

_____

The Committee to Save the Rio Hondo ("Committee") appeals the district court's order granting intervenor Taos Ski Valley's ("Ski Area") motion for summary judgment.[1] The district court held the Committee lacked standing to challenge the Forest Service's decision allowing summertime use of the Ski Area. We disagree. We reverse and remand for consideration of the merits.

## II. BACKGROUND

Taos Ski Valley is a ski area located in New Mexico, within the Carson National Forest. The Ski Area is located near the headwaters of the Rio Hondo River, which flows through the village of Arroyo Hondo. The Ski Area operates under term and special use permits issued by the Forest Service. In 1981, the Carson National Forest Supervisor approved a master development plan accompanied by an environmental impact statement prepared in compliance with the National Environmental Policy Act's provisions. The environmental impact statement addressed only the impacts of wintertime Ski Area operations.

_____

[1] The Forest Service did not join in the Ski Area's motion for summary judgment.

Recently, the Ski Area proposed an amendment to its master plan and special use permit to allow for some summertime operation of its facilities. In considering the Ski Area's request, the Forest Service prepared an environmental assessment. An environmental assessment contains a less exhaustive environmental analysis than does an environmental impact statement. Acting as Supervisor of the Carson National Forest and relying on the environmental assessment, Leonard Lucero prepared a finding of no significant impact and record of decision that approved the Ski Area's proposed summer operations, and a corresponding amendment to the master development plan and special use permit.

After first exhausting its administrative remedies, the Committee brought this action claiming the Forest Service had failed to follow the National Environmental Policy Act's procedures when it approved the summertime use of the Ski Area. The Committee claimed the Forest Service's approval of the amended master development plan and special use permit was either a "major Federal action significantly affecting the ... environment" requiring the Forest Service to prepare an environmental impact statement, or the approval was a "substantial change" to the plan, requiring the Forest Service to prepare a supplemental environmental impact statement. National Environmental Policy

Act of 1969; 42 U.S.C. § 4332 (2)(C)(i-v)(1994); 40 C.F.R. § 1502.9(c)(1)(i)(1995). The Committee claimed the Forest Service's failure to complete an environmental impact statement or supplemental environmental impact statement prior to making the amendments violated the National Environmental Policy Act.

The Ski Area filed a "Motion to Dismiss, to be Treated as a Summary Judgment," on the ground the Committee lacked standing. In response to the motion, the Committee filed sworn affidavits from two members claiming they used and enjoyed the land and water surrounding the Ski Area for recreation and irrigation. Additionally, the affiants claimed their use and enjoyment of the area's land and water would be damaged by the year-round operation of the Ski Area.

The District Court for the District of New Mexico granted the motion in favor of the Ski Area holding the Committee had not shown sufficient injury in fact or redressability to establish constitutional standing. Particularly, the district court held that because the Committee could not show the Forest Service would be required to follow the recommendations of an environmental impact statement, the Committee's fears of possible harm to the land and water were both immaterial and too speculative to constitute injury in fact. Also, the District

Court held that because the Forest Service had already complied with the National Environmental Policy Act by completing a thorough environmental assessment, the Committee had failed to establish a favorable decision would redress its injuries.

## III.  DISCUSSION

The Ski Area questions the Committee's standing to challenge the Forest Service's actions.  Because standing is a question of law for the court to determine, we review the district court's determination of standing *de novo*. *Mountain Side Mobile Estates Partnership v. Secretary of Housing & Urban Dev.*, 56 F.3d 1243, 1249 (10th Cir. 1995).  *See also Catron County Bd. of Comm'rs v. United States Fish & Wildlife Serv.*, 75 F.3d 1429, 1433 (10th Cir. 1996).

The doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).[2]  The constitutional minimum of standing contains three elements.  *Defenders of*

---

[2]  Although *Defenders of Wildlife* was an Endangered Species Act case, it has important implications for standing in the National Environmental Policy Act context.  In *Defenders of Wildlife*, the court explained that in the context of the National Environmental Policy Act, litigants face few standing barriers where an agency's procedural flaw results in concrete injuries.

*Wildlife*, 504 U.S. at 560. First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is "concrete and particularized" and "actual or imminent." *Id.*; *Catron County*, 75 F.3d at 1433. Second, a causal connection must exist between the injury and the conduct complained of; the injury must be fairly traceable to the challenged action. *Defenders of Wildlife*, 504 U.S. at 560; *Catron County*, 75 F.3d at 1433. Third, it must be likely that the injury will be redressed by a favorable decision. *Defenders of Wildlife*, 504 U.S. at 561; *Catron County*, 74 F.3d at 1433.[3]

Because the National Environmental Policy Act does not contain a private right of action for those seeking to enforce its procedural requirements, a plaintiff must rely on the Administrative Procedures Act as the basis for its action and,

---

[3] The same three elements apply when an association is the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 511 (1975). An association has standing to sue even if it has not been injured itself so long as the association's members satisfy the constitutional minimum of Article III. An association has standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *see also Colorado Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1396 (10th Cir. 1992), *cert. denied*, 507 U.S. 949 (1993). The second two prongs of this test are satisfied. Only the first prong, whether the members themselves satisfy the elements of Article III, is in dispute.

therefore, in addition to satisfying the constitutional standing requirements, a plaintiff must establish it is "adversely affected or aggrieved ... within the meaning of a relevant statute" by some final agency action. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 883 (1990); *Catron County*, 75 F.3d at 1434. To be adversely affected within the meaning of the National Environmental Policy Act, the Committee must establish they have suffered an injury in fact falling within the "zone of interests" protected by the National Environmental Policy Act. *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 686 (1973); *Sierra Club v. Morton*, 405 U.S. 727, 733 (1972); *see also National Wildlife Fed'n*, 497 U.S. at 883. As a preliminary matter, we hold that because the Committee seeks to protect its recreational, aesthetic, and consumptive interests in the land and water surrounding their village, their alleged injuries fall within the "zone of interests" that the National Environmental Policy Act was designed to protect. *National Wildlife Fed'n*, 497 U.S. at 886. Additionally, there is no dispute the Forest Service's action was final. Therefore, we turn to whether the Committee has established standing to sue under Article III.

## A. Injury in Fact

The Ski Area first contends the Committee members' affidavits do not establish an injury in fact. The Committee asserts that because its members have a concrete interest in the land and water in and surrounding the Ski Area that may be adversely affected by the Forest Service's decisions, the Forest Service's failure to follow the procedures of the National Environmental Policy Act constitutes injury in fact.

In considering these claims it is important to remember the procedural nature of a National Environmental Policy Act claim. The National Environmental Policy Act was enacted to protect and promote environmental quality. 42 U.S.C. § 4331(a-c) (1994). To ensure this protection, the National Environmental Policy Act establishes "action forcing" procedures the agencies must follow, such as requiring an agency to prepare either an environmental impact statement or a supplemental environmental impact statement under certain circumstances. 42 U.S.C. § 4332 (2)(C)(i-v); 40 C.F.R. § 1502.9(c)(1)(i). These prescribed procedures guarantee the agency will take a "hard look" at the environmental consequences of its actions. *Kleppe v. Sierra Club*, 427 U.S. 390, 410 n.21 (1976). By focusing the agency's attention on the environmental consequences of its actions, the National Environmental Policy Act "ensures that

-8-

important effects will not be overlooked or underestimated only to be discovered after resources have been committed or the die otherwise cast." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). While the National Environmental Policy Act itself does not mandate the particular decisions an agency must reach, it does mandate the necessary process the agency must follow while reaching its decisions. *Id.* at 350.

An agency's failure to follow the National Environmental Policy Act's prescribed procedures creates a risk that serious environmental consequences of the agency action will not be brought to the agency decisionmaker's attention. The injury of an increased risk of harm due to an agency's uninformed decision is precisely the type of injury the National Environmental Policy Act was designed to prevent. Thus, under the National Environmental Policy Act, an injury of alleged increased enviromental risks due to an agency's uninformed decisionmaking may be the foundation for injury in fact under Article III. *Douglas County v. Babbitt*, 48 F.3d 1495, 1499-1501 (9th Cir. 1995), *cert. denied*, 116 S. Ct. 698 (1996); *City of Davis v. Coleman*, 521 F.2d 661, 671 (9th Cir. 1975).

Although the National Environmental Policy Act accords procedural rights

to those with an interest in protecting the environment, standing under Article III also requires a plaintiff be among the injured. *Morton*, 405 U.S. at 734-35. To fully establish injury in fact, a plaintiff must be able to show that a separate injury to its concrete, particularized interests flows from the agency's procedural failure. *Defenders of Wildlife*, 504 U.S. at 572. In *Defenders of Wildlife,* the Supreme Court said:

> We have consistently held that a plaintiff raising only a generally available grievance about government--claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large--does not state an Article III case or controversy.

*Id.* at 573-74. Therefore, to establish injury in fact for purposes of Article III, a plaintiff must not only show that the agency's disregard of a procedural requirement results in an increased risk of environmental harm, but a plaintiff must also show the increased risk is to the litigant's concrete and particularized interests. *Id.* at 573 n.8, 578; *Douglas County*, 48 F.3d at 1500. To demonstrate that the increased risk of harm injures the plaintiff's concrete interests, the litigant must establish either its "geographical nexus" to, or actual use of the site where the agency will take or has taken action such that it may be expected to suffer the environmental consequences of the action. *Douglas County*, 48 F.3d at 1501 (stating that the "geographic nexus" test is equated with the "concrete interest" test of *Defenders of Wildlife*, 504 U.S. at 573 n.8); *Coleman*, 521 F.2d at 670; *see*

-10-

*also Catron County*, 75 F.3d at 1433.

Furthermore, because standing is not "an ingenious academic exercise in the conceivable," at the summary judgment stage, injury in fact requires "a factual showing of perceptible harm." *Defenders of Wildlife*, 504 U.S. at 566 (quoting *Students Challenging Regulatory Agency Procedures*, 412 U.S. at 688). A plaintiff may not merely allege it can imagine circumstances in which it could be affected by the agency action. The risk of environmental harm to the litigant's concrete interests due to the agency's uninformed decisionmaking must be actual, threatened, or imminent, not merely conjectural or hypothetical.[4] *Defenders of Wildlife*, 504 U.S. at 560.

Ultimately then, the injury in fact prong of the standing test of Article III breaks down into two parts: (1) the litigant must show that in making its decision without following the National Environmental Policy Act's procedures, the agency created an increased risk of actual, threatened, or imminent environmental harm;

_____

[4] The Supreme Court has explained that in the context of a National Environmental Policy Act claim, the litigant need not satisfy the requirement of immediacy for purposes of injury in fact because the federal project complained of may not affect the concrete interest for several years; however, the injury in fact requirement certainly is met where the litigant establishes that injury to concrete interests is imminent. *Defenders of Wildlife*, 504 U.S. at 572 n.7.

and (2) the litigant must show that the increased risk of environmental harm injures its concrete interests by demonstrating either its geographical nexus to, or actual use of the site of the agency action.

In cases reviewing questions of standing under a motion to dismiss, the court presumes general allegations embrace those specific facts necessary to support the claim. *Defenders of Wildlife*, 504 U.S. at 561; *Students Challenging Regulatory Agency Procedures*, 412 U.S. at 689-90 (1973); *Glover River Org. v. United States Dept. of the Interior*, 675 F.2d 251, 254 n.3 (10th Cir. 1982). However, where, as here, a defendant moves for summary judgment, the plaintiff can no longer rest on "mere allegations." Fed. R. Civ. P. 56(e); *Defenders of Wildlife*, 504 U.S. at 561. Instead, the plaintiff must set forth by affidavit or other evidence, "specific facts" showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Defenders of Wildlife*, 504 U.S. at 561; *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1182 (10th Cir. 1995). In considering the motion, we examine the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988)).

The Ski Area contends the Committee members' affidavits do not allege facts specific enough to establish injury in fact. We disagree. The Committee's affidavits sufficiently demonstrate an increased risk of environmental harm to concrete interests the National Environmental Policy Act's procedures are meant to protect. Therefore, the Committee has established injury in fact.

### 1.    Increased Risk of Environmental Harm

The Committee submitted affidavits from two members in response to the Ski Area's standing challenge. Both affiants live in Arroyo Hondo, twelve to fifteen miles downstream from the Ski Area. First, through their affidavits, the affiants have established they suffer an increased, threatened risk of environmental harm due to the Forest Service's alleged uninformed decisionmaking. The affiants attested to the Forest Service's failure to complete either an environmental impact statement or a supplemental environmental impact statement. The affiants aver the Forest Service's uninformed decision will affect the Rio Hondo River because the summertime use of the Ski Area will result in increased river water consumption. Furthermore, the affiants aver the summertime use of the Ski Area will affect the quality of the river by increasing sewage discharge and non-point source pollution from increased vehicle travel, silt, and industrial fluids from the Ski Area's mechanical operations. Also, one of

the affiants, Mr. Romero, avers that summertime use of the Ski Area would disturb the recreational and aesthetic value of the land in and around the Ski Area because summertime use of the Ski Area increases development and mechanization. These facts are sufficient to establish the affiants suffer a threatened increased risk of environmental harm due to the Forest Service's alleged failure to follow the National Environmental Policy Act's procedures.

2.      Concrete Interests

The affiants established the Forest Service's alleged procedural failures impair their separate, concrete interests because the affiants have a geographical nexus to, and actually use the land and water in the affected area. The Ski Area argues the affiants do not have a concrete interest at stake because they live twelve to fifteen miles downstream from the Ski Area. The Ski Area does not dispute, however, that the affiants have used the waters of the Rio Hondo watershed for their entire lifetimes for irrigating, fishing, and swimming, and that they intend to continue their use. Because the affiants live immediately downstream from and share the same watershed with the Ski Area, they may be expected to suffer the effects of decreased water quality resulting from summertime use of the Ski Area. Consequently, the affiants have established their geographical nexus to the site of the agency action.

-14-

Additionally, Mr. Romero actually uses the land in and around the Ski Area. Mr. Romero avers:

> All my life, I have used the area in and around the Taos Ski Valley for recreational and subsistence purposes. For example, I often use these lands for hunting, hiking, and general aesthetic enjoyment. Further development of the Taos Ski Valley ... injures my interest in the continued use of the area.

These affidavits are sufficient to show the affiants have a concrete interest upon which their procedural claim is based. Because the affiants have a geographical nexus to, and actually use land and water the Forest Service has exposed to an increased risk of environmental harm due to its alleged uninformed decisionmaking, the affiants have established an injury in fact for purposes of Article III.

Our conclusion is consistent with established Supreme Court precedent. The purpose of the injury-in-fact requirement of Article III is to ensure only those having a "'direct stake in the outcome,'" and not those having abstract concerns, may have access to the courts. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982) (quoting *Morton*, 405 U.S. at 740). Unlike the affiants in *National Wildlife Fed'n* and *Defenders of Wildlife*, the Committee's members have established such a direct stake. The affiants live in the same watershed where the Ski Area is located, and

they have used the water flowing directly from the Ski Area for irrigation and recreation for their lifetimes with the present intent to continue using the water in the same manner. Unlike the affiants in *Defenders of Wildlife* who only could allege an injury at some indefinite future time, these affiants have established a present and continuing interest in the land and water sufficient for Article III's injury in fact requirement. *Defenders of Wildlife*, 504 U.S. at 563-64. Additionally, unlike the affiants in *National Wildlife Fed'n* who could only claim to use land "in the vicinity" of the affected land, Mr. Romero actually uses the land in the Ski Area for recreational purposes. These facts are specific enough to establish the affiants' concrete interests are threatened such that the Committee has the right to ensure the Forest Service follows the National Environmental Policy Act's procedures.

We hold, therefore, the Committee has met Article III's requirement the plaintiff demonstrate an injury in fact to itself or its members.

### B. Causation

In addition to establishing injury in fact, a plaintiff must also establish causation. *Defenders of Wildlife*, 504 U.S. at 560-61. To establish causation, a plaintiff must show its injuries are fairly traceable to the conduct complained of.

*Id.* In the context of a National Environmental Policy Act claim, the injury is the increased risk of environmental harm to concrete interests, and the conduct complained of is the agency's failure to follow the National Environmental Policy Act's procedures. To establish causation, a plaintiff need only show its increased risk is fairly traceable to the agency's failure to comply with the National Environmental Policy Act. *Catron County*, 75 F.3d at 1433; *see also Defenders of Wildlife*, 504 U.S. at 572 n.7.

Recently, in *Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996), the D.C. Circuit presented a somewhat different causation analysis for National Environmental Policy Act claims. In *Bentsen*, the court held:

> To prove causation, a plaintiff seeking the preparation of an [environmental impact statement] must demonstrate that the particularized injury that the plaintiff is suffering or is likely to suffer is fairly traceable to the agency action that implicated the need for an [environmental impact statement]. In other words, unless there is a substantial probability that the substantive agency action created a demonstrable risk, or caused a demonstrable increase in an existing risk, of injury to the particularized interests of the plaintiff, the plaintiff lacks standing.

*Id.* at 669 (emphasis added) (citations omitted). This analysis appears to confuse the issue of the likelihood of the harm, which is better addressed in the injury in fact prong of the analysis, with its cause.

Whether an increased risk will or will not occur due to the agency action determines whether a plaintiff has suffered injury in fact, not causation. Certainly, under the injury in fact prong, a plaintiff cannot merely allege that some highly attenuated, fanciful environmental risk will result from the agency decision; the risk must be actual, threatened or imminent. However, once the plaintiff has established the likelihood of the increased risk for purposes of injury in fact, to establish causation, as the Committee has here, the plaintiff need only trace the risk of harm to the agency's alleged failure to follow the National Environmental Policy Act's procedures. Under the National Environmental Policy Act, an injury results not from the agency's decision, but from the agency's *uninformed* decisionmaking. The increased risk of adverse environmental consequences is due to the agency's "failure substantively to consider the environmental ramifications of its actions in accordance with [the National Environmental Policy Act]." *Catron County*, 75 F.3d at 1433; *see also Defenders of Wildlife*, 504 U.S. at 572 n.7; *Resources Ltd., Inc. v. Robertson*, 35 F.3d 1300, 1303 n.2 (9th Cir. 1994); *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1517-18 (9th Cir. 1992).

The purpose of the statutory requirement that a federal agency prepare an environmental impact statement is to ensure that in reaching its decision, the

agency will have available and will carefully consider detailed information concerning significant environmental impacts. *Methow Valley*, 490 U.S. at 349. To require that a plaintiff establish that the agency action will result in the very impacts an environmental impact statement is meant to examine is contrary to the spirit and purpose of the National Environmental Policy Act. The National Environmental Policy Act was not intended to require the plaintiff to show with certainty, or even with a substantial probability, the results of agency action; those examinations are left to an environmental impact statement. To the extent that the D.C. Circuit's standard requires a plaintiff to establish something more than set out here, it is contrary to the intent and essence of the National Environmental Policy Act and is, therefore, rejected.

The Ski Area argues the Committee has not established causation because it has not sought a preliminary injunction ordering the withdrawal of Mr. Lucero's decision to allow summertime use of the Ski Area. We disagree. The Ski Area fails to cite authority for the proposition that to have standing under the National Environmental Policy Act, a plaintiff must seek a preliminary injunction. We fail to see the relevance of whether or not a plaintiff seeks extraordinary relief to the issue of standing. We hold, therefore, the Committee has established causation.

## C. Redressability

Finally, a plaintiff must also establish it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Defenders of Wildlife*, 504 U.S. at 561; *Catron County*, 75 F.3d at 1433. Compliance with the National Environmental Policy Act would avert the possibility that the Forest Service may have overlooked significant environmental consequences of its action. Under the National Environmental Policy Act, "the normal standards for redressability" are relaxed; a plaintiff need not establish that the ultimate agency decision would change upon National Environmental Policy Act compliance. *Defenders of Wildlife*, 504 U.S. at 572 n.7; *Catron County*, 75 F.3d at 1433. Rather, the Committee must establish, as it has, that its injury would be redressed by a favorable decision requiring the Forest Service to comply with National Environmental Policy Act's procedures. That the Forest Service may not change its decision to allow summertime operations at the Ski Area after preparing an environmental impact statement is immaterial. *Catron County*, 75 F.3d at 1433; *see also* National Environmental Policy Act of 1969; 42 U.S.C. § 4332(2)(C)(i-v) (1988); 40 C.F.R. § 1502.9(c)(1)(i)(1995).

Accordingly, we hold the Committee has established standing. We **REVERSE** the district court and **REMAND** for consideration of the merits.

No. 95-2274 - **Committee to Save the Rio Hondo v. Lucero**

Roney, Senior Circuit Judge, specially concurring:

I concur in the result with the understanding that the decision reached by the Court concerns only the threshold issue of whether plaintiffs have standing to challenge the Forest Service's compliance with the National Environmental Protection Act. We have not considered the merits, that is, whether the Forest Service has already complied with the Act, or, if not, what might be required to bring it into compliance.