Concurring Opihion by
NAKAYAMA, J.
I agree that Sierra Club has not demonstrated it has standing to challenge the Hawaii Tom-ism Authority’s [hereinafter “HTA”] failure to perform an environmental assessment [hereinafter “EA”], pursuant to Hawai'i Revised Statutes (HRS) § 343-5 (1993 & Supp.2001). The plurality concludes that Sierra Club fails to show it has a procedural right because it has not demonstrated it has substantive standing. I do not agree. I believe the purpose of procedural standing is to permit “[o]thers,” who allege a procedural violation, to challenge an action before it results in a substantive violation.
However, I believe that even utilizing a procedural standing analysis, Sierra Club has failed to show it has a right under HRS § 343-7 (1993)[1] to challenge the HTA’s failure to conduct an EA. Sierra Club has not shown that the alleged adverse environmental effects to land can be attributed to the expenditure of money on a marketing plan. Without a sufficient correlation between the agency action and alleged effect, Sierra Club fails to show it has a concrete interest. Absent this, Sierra Club does not have standing in this matter.
A. Procedural standing is appropriate for cases alleging violations of HRS Chapter 343.
Under the procedural injury framework, Sierra Club must show it (1) has been conferred a procedural right to protect a concrete interest under HRS § 343-7(a), and (2) has a threatened concrete interest that underlies its basis for standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 572, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); see also Douglas County v. Babbitt, 48 F.3d 1495, 1499 (9th Cir.1995). The Ninth Circuit has interpreted the first requirement as one bestowed by statute: “Because some of our eases and some language in Lujan require that plaintiffs have a right conferred by the challenged statute, we require that showing in this case.” Douglas County, 48 F.3d at 1501 n. 4;[2] see also Lujan, 504 U.S. at 573 n. 8, 112 S.Ct. 2130 (“We do not hold that an individual cannot enforce procedural rights; *266 he assuredly can, so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing.”)- The plurality reasons that Sierra Club does not have standing because it has no procedural right accorded to it by HRS Chapter 343 [hereinafter “Hawaii Environmental Procedural Act (HEPA)”]. While I agree with this conclusion, I do not agree with the analysis employed by the plurality.
In summary fashion, the plurality concludes that only parties specifically designated as having automatic standing may assert a procedural injury:
As the parties listed in HRS § 343-7(a) are the only ones who can enforce the lack of an EA statement, they are the only ones who may arguably assert a ‘procedural injury’ via court action.... The distinction drawn in HRS § 343-7(a) is between those named parties who could be said to have an unquestioned right of action and ‘others,’ who must show that they are aggrieved in some way, in a court action.
All others may be deemed aggrieved by demonstrating substantive standing in a quasi-judicial action, for example a contested case hearing:
Thus, ‘others’ [who seek standing] must show in a court action brought under § 343-7(a) that they are aggrieved and must be adjudged aggrieved, in concert with a challenge to the lack of an EA statement. To be adjudged aggrieved, under our case law, it follows that such parties must satisfy the injury-in-fact test requirements.
Therefore, under the plurality’s analysis, the only means by which Sierra Club may prove it has a procedural right is to demonstrate it has substantive standing;[3] because Sierra Club did not demonstrate “an actual or threatened injury in fact,” it did not establish “a so-called ‘procedural right’ platform from which it could assert a ‘procedural injury[.]’ ”
Not only has the plurality failed to cite authority supporting its conclusion, its conclusion poses problems in the application of HRS § 343-7. First, it is incongruous to require a prospective plaintiff to prove it has substantive standing in order to show it has a procedural right to allege a procedural harm. Second, the plurality’s holding would effectively exclude review of agency action by those designated as “others” until an agency completes its project.
Although this court has construed substantive standing broadly, it is inappropriate to stretch the borders of this limitation to encompass rights conferred that are inherently procedural. For this reason, I agree with the dissent that the federal courts’ construction of procedural standing is appropriate as applied to HEPA because, similar to its federal counterpart, NEPA, HEPA sets forth various requirements that are inherently procedural. The plurality’s decision misconstrues the nature of the right asserted and the standing requirements imposed upon the parties asserting the injury to that right. As the dissenting opinion notes, HEPA grants procedural, and not substantive, rights and remedies. Substantive laws are notably and manifestly different from procedural ones: “Substantive rights are generally defined as rights which ... create a new obligation, impose a new duty ... as distinguished from remedies or procedural law which merely prescribed methods of enforcing or giving effect to existing rights.” Clark v. Cassidy, 64 Haw. 74, 77, 636 P.2d 1344, 1347 (1981) (citations and internal quotation marks omitted).
The main thrust of HEPA is to require agencies to consider the environmental effects of projects before action is taken. It does so by providing a procedural mechanism to review environmental concerns. HRS § 343-1 (1993). The legislature explained that HEPA provides an “environmental review process [that] will integrate the review of environmental concerns with existing planning processes of the State and counties and alert decision makers to significant environmental effects which may result from the implementation of certain actions.” HRS *267 § 343-1. One of the procedural tools of HEPA is an EA, which is used to determine circumstances under which a particular action will have a significant effect on the environment. HRS § 343-2 (Supp.2001). If the EA concludes that a significant impact is expected, an Environmental Impact Statement (EIS),[4] among other things, must be prepared. HRS § 343-2; HRS § 343-5(b). If no significant effect is expected, the agency submits a draft EA that must be available for public comment and review. HRS § 343—5(b). (“Whenever an agency proposes an action in subsection (a), ... that agency shall prepare an environmental assessment for such action at the earliest practicable time to determine whether an environmental impact statement shall be required. For environmental assessments for which a finding of no significant impact is anticipated, a draft environmental assessment shall be made available for public review and comment for a period of thirty days.”). Consequently, HEPA does not confer substantive rights or remedies. To insist that a prospective plaintiff demonstrate substantive standing pursuant to a statute that confers only procedural rights ignores the plain language of HRS § 343-7(a).
The procedural standing doctrine[5] was first adopted in Scientists’ Inst. for Public Info., Inc. v. Atomic Energy Comm’n, 481 F.2d 1079, 1086 n. 29 (D.C.1973), to avoid such problems. The Scientists’ Inst, for Public Info., Inc. court developed procedural standing to address environmental concerns before irreversible agency action could be completed.[6] Id. The circuit court noted that no other means of establishing standing would be sufficient because it would otherwise “insulate administrative action from judicial review, prevent the public interest from being protected through the judicial process, and frustrate the policies Congress expressed in [the National Environmental Procedure Act (NEPA) ], a result clearly inconsistent with the Supreme Court’s approach to standing.” Id. For similar reasons, this court should also adopt the procedural standing doctrine in this case. In Lujan, the Supreme Court noted that the main objective of procedural standing is to allow prospective plaintiffs the ability to meet substantive standing requirements “without all the normal standards for redressability and immediacy” because “[tjhere is much truth to the assertion that ‘procedural rights’ are special[.]” Lujan, 504 U.S. at 572 n. 7, 112 S.Ct. 2130. Because claimants need not prove immediacy and redressability, they can invoke judicial review at each stage of a project, before completion.
Substantive standing requires a prospective plaintiff to prove its concrete and particularized interest has been harmed or is in imminent harm. If Sierra Club were to be required to meet this test, it would have to wait until its concrete interests were injured by the completion or near completion of the marketing plan. This result would render HEPA meaningless. Therefore, the plurality’s conclusion, that Sierra Club must prove it has substantive standing, would require judicial review of compliance with HEPA only after the necessary stages of a proposed *268 project had been completed and, as a result, considerable expenses consumed. City of Davis v. Coleman, 521 F.2d 661, 670 (9th Cir.1975) (“Thus, if a particular project does in fact entail serious but nonobvious environmental impacts, agency failure to prepare an EIS may mean that the last opportunity to eliminate or minimize these impacts, in accordance with NEPA’s broad objectives, has been lost.”). To preserve both the purpose and intent of HEPA, I would hold that Sierra Club may attempt to demonstrate that it is aggrieved by proving it has procedural standing.
B. Sierra Club does not have procedural standing because the nexus between the expenditure of funds and harm to the areas designated by Sierra Club members is attenuated.
In addition to demonstrating a procedural right, a prospective plaintiff must also show it has a concrete interest that is the basis for its standing to challenge agency action. Douglas County, 48 F.3d at 1500. However, Sierra Club’s allegation that it has a geographic nexus to various sites on the island that may be affected by increased visitor traffic as a result of HTA’s marketing plan is not sufficient to establish such a concrete interest in this ease. Unlike Douglas and other federal court cases where agency action involved the construction or use of land, HTA’s expenditure of moneys on a marketing plan lacks the same close correlation between agency action and use of land. Such a correlation must be established for claims alleging a right pursuant to HRS § 343-5 because to do otherwise would create an absurd result-the requirement of an EA for any expenditure of state and county funds.
I would hold that when a prospective plaintiff claims a procedural violation for an agency’s expenditure of funds, pursuant to HRS § 348-5(a)(l), it must prove (1) a nexus between the use of state and county moneys and the effects on land designated by HRS § 343-5(a), and (2) a “geographical nexus” to those lands in order to establish a concrete interest. In this case, Sierra Club has failed to prove it has a concrete interest because the nexus between the HTA’s proposed marketing plan and the alleged environmental effects is dependent upon the decisions of independent acts of prospective visitors. The alleged harm is, therefore, too attenuated from the proposed marketing plan.
The Ninth Circuit made clear that an agency’s failure to adhere to NEPA does not, without more, satisfy the procedural standing test. Fernandez v. Brock, 840 F.2d 622, 628 (9th Cir.1988). To determine whether a claimant’s concrete and particularized interests are potentially threatened by an agency’s failure to perform a statutorily mandated procedure, the Ninth Circuit requires an examination of “the statutory language, the statutory purpose, and the legislative history” of the pertinent statute. Id. at 629.
As applied to NEPA, the federal courts have only required that a prospective plaintiff demonstrate it has a geographic nexus to the site of agency action. In City of Davis v. Coleman, 521 F.2d 661, 665-66 (9th Cir.1975), the plaintiffs alleged a violation of NEPA when the California Department of Public Works and Federal Highway Administration failed to perform an EIS for the proposed construction of a freeway to run three to four miles south of the City of Davis. The Ninth Circuit observed that the purpose of NEPA is to require federal agencies to follow a procedure that considers environmental effects of a proposed action. Id. at 673 (citation omitted). The City of Davis court established what has become the standard test for determining procedural standing; it requires a prospective plaintiff to establish a “geographic nexus” to “the site of the challenged project.” Id. at 671 (emphasis added). It held that this test, while broad, was necessary because a prospective plaintiff with such a nexus could be expected to suffer from the environmental consequences of the challenged project. Id. (“Davis has met the test. Because of its proximity to the Kidwell project it may be expected to suffer a wide variety of environmental consequences that it alleges will result from the interchange, if in fact the allegations have substance.”).
This geographic nexus requirement was adopted by the Tenth Circuit in Committee to Save the Rio Hondo v. Lucero, 102 F.3d *269 445, 449 (10th Cir.1996). The Committee to Save the Rio Hondo filed suit against the United States Forest Service for failing to comply with NEPA when it granted the Taos Ski Area’s proposed amendment to its master plan and special use permit to allow operations during the summer without performing an EIS. Id. at 446. In resolving this case, the Tenth Circuit required a prospective plaintiff to show: (1) that an agency’s failure to follow a particular procedure increased the risk of harm to the environment; and (2) this increased risk of environmental harm adversely affected a prospective plaintiffs concrete interests. Id. at 449. The plaintiff demonstrates a concrete interest by establishing that it either has a geographic nexus to or actually uses a site subject to agency action. Id.
In City of Davis and Committee to Save the Rio Hondo, the proposed action involved using land for a specific purpose-construction of a freeway and use of land during both the summer and winter seasons. Even in Douglas, the challenged action involved the failure to comply with NEPA when the Secretary of Interior proposed designating specific acres of land as a critical habitat. Douglas, 48 F.3d at 1498-99. In all of these cases, the courts deemed the prospective plaintiffs aggrieved and conferred standing. The instant case, however, is distinguishable because the challenged agency action does not involve the use of land; it involves the use of funds on an advertising campaign. The geographic sites utilized by Sierra Club members are affected only if the advertising campaign (1) convinces more visitors to travel to Hawaifi, and (2) increases visitor traffic to the sites with which Sierra Club members have a geographic nexus. Unlike City of Davis, Committee to Save Rio Hondo, and Douglas, the challenged agency action does not involve the use of land.
Requiring parties to establish a sufficient nexus between the expenditure of funds and the use of land conforms with the plain construction of HRS § 343-5. It is a fundamental precept in statutory construction that each part of a statute must be construed in light of the whole. Norma Singer, Sutherland Statutory Construction, § 46:05 (6th ed.2000). Departure from a literal interpretation of a statute is therefore justified if it produces “an absurd and unjust result and the literal construction in the particular action is clearly inconsistent with the purposes and policies of the act.” Pacific Ins. Co. v. Oregon Auto. Ins. Co., 53 Haw. 208, 211, 490 P.2d 899, 901 (1971). HEPA requires an EA to be performed when an agency proposes “the use of state or county lands or the use of state or county funds.” HRS § 343-5(a)(1) (emphases added). Because the correlation between the expenditure of funds and environmental impact to land is more attenuated than the proposed use of land, conferring standing on those alleging merely a diffuse line of causation between environmental harms and the expenditure of funds would lead to absurd results.
Nearly every provision of HRS § 343-5 involves the direct use of land. HRS § 343-5 provides, inter alia, that an EA is required for the proposed (1) use of state and county lands, (2) use within any land classified as conservation districts, (3) use within the shoreline area, (4) use within any historic site, (5) use within the Waikiki area, (6) amendments to county plans that would result in designating land as something other than agriculture, conservation, or preservation, (7) reclassification of any land classified as conservation district, and (8) construction of new or modification to existing helicopter facilities that affects land classified as conservation districts.[7] The only exception is the *270 expenditure of funds mandated in HRS § 343-5(a)(l). It is dear that the legislature contemplated that the expenditure of funds must have a direct correlation to the use of lands designated in HRS § 343-5(a)(2)(8). Therefore, I would hold that HRS § 343-5(a)(1) does not support standing to challenge the failure to conduct an EA when a state or county agency simply expends funds. Rather, HRS § 343-5(a)(l) requires an EA for those projects that have a sufficient nexus to the purposes intended by the legislature in enacting HEPA.
Sierra Club has not demonstrated a sufficient nexus. It alleges that HTA’s proposed marketing plan would increase visitor traffic to the roadways frequently used by Sierra Club members, overuse of the beaches and parks frequented by the members of Sierra Club, the inability to bodysurf unobstructed by visitors in areas used by members of Sierra Club, the inability to enjoy the ocean and afr without being interrupted by visitors using helicopters and water-crafts in areas used by members of Sierra Club, the introduction of non-native plants to Hawai'i’s hiking trails used by members of Sierra Club, and the destruction of foliage to Hawai'i’s hiking trails used by members of Sierra Club. However, all of the proposed possible effects on the roadways, beaches, and hiking trails used by Sierra Club members cannot be directly attributable to HTA’s expenditure of funds. Rather, it is dependent upon the acts of independent actions of third parties not before this eourt-the visitors who, as a direct response to HTA’s marketing plan, must choose to frequent Hawai'i, specifically the areas used by Sierra Club members, in increased numbers. This is not akin to the proposed agency projects that involve the construction of a freeway, commercial use of land during previously off-peak seasons, or designation of land as critical habitat. The effect in this ease is much more attenuated and cannot, without more, constitute a concrete interest.
For the above reasons, I concur in the result reached by the plurality but not the reasoning employed by it. Therefore, I would hold that parties asserting a grievance pursuant to HEPA may assert procedural standing. However, because Sierra Club has failed to prove it is an aggrieved party, it fails to show it has standing in this case.

. In Douglas County, the plaintiff sued the Secretary of Interior for failing to comply with the National Environmental Policy Act (NEPA) when the Secretary concluded an EA, and consequently EIS, need not be prepared for the designation of lands as critical habitat. Douglas County, 48 F.3d at 1498. The Secretary challenged the plaintiff's standing. Id. at 1499. The Ninth Circuit conferred standing on tire plaintiffs because, among other things, NEPA provided that " 'local agencies, which are authorized to develop and enforce environmental standards' may comment on the proposed federal action.” Id. at 1501 (quoting 42 U.S.C. § 4332(2)(C)). The court construed Douglas County as such an agency because an Oregon Statute authorized counties to " ‘[pjrepare, adopt, amend, and revise’ land management plans that contain environmental standards.” Douglas County, 48 F.3d at 1501 (quoting Or.Rev.Stat. § 197.175 (1993)). Douglas County constituted a local agency because an Oregon statute allowed counties to " '[p]repare, adopt, amend, and revise' land management plans that contain environmental standards.” Douglas County, 48 F.3d at 1501 (quoting Or.Rev.Stat. § 197.175 (1993)). The Douglas County court also held that the plaintiff established it had a concrete interest because the lands at issue were adjacent to the county. Douglas County, 48 F.3d at 1501.

. I differentiate between "substantive standing” and "procedural standing.” For purposes of this opinion, I refer to the injury in fact standing test as "substantive standing” and the standing test enunciated in Lujan as procedural standing.

. An EIS is an "informational document prepared in compliance with the rules ... [that] discloses the environmental effects of a proposed action....” HRS § 343-2.

. The procedural standing test requires:
(1) that he or she is a "person who has been accorded a procedural right to protect [his or her] concrete interests. ...” Lujan, 504 U.S. at 572 n. 7, 112 S.Ct. 2130 and (2) that the plaintiff has “some threatened concrete interest ... that is the ultimate basis of [his or her] standing.” Lujan, 504 U.S. at 573 n. 8, 112 S.Ct. 2130, see also Douglas County, 810 F.Supp. [1470,] 1477 [(D. Oregon 1992)].
Douglas County, 48 F.3d at 1500 (quoting Lujan, 504 U.S. at 573 n. 8, 112 S.Ct. 2130) (footnotes omitted) (emphasis added).

.The Scientists' Inst, for Public Info., Inc. court specifically stated that:
The basic thrust of NEPA is to require consideration of environmental effects of proposed agency action long enough before that action is taken so that important agency decisions can meaningfully reflect environmental concerns. In the context of a long-range program such as involved here, judicial review of compliance with NEPA is necessary at stages at which significant resources are being committed, lest the statute's basic purpose be thwarted.
Scientists' Inst. for Public Info., Inc., 481 F.2d at 1086 n. 29.

. HRS § 343-5 provides in relevant part:
(a) Except as otherwise provided, an environmental assessment shall be required for actions which:
(1)Propose the use of state or county lands or the use of state or county funds, other than funds to be used for feasibility or planning studies for possible future programs or projects which the agency has not approved, adopted, or funded, or funds to be used for the acquisition of unimproved real ¡property; provided that the agency shall consider environmental factors and available alternatives in its feasibility or planning studies;
(2) Propose any use within any land classified as conservation district by the state land use commission under chapter 205;
(3) Propose any use within the shoreline area as defined in section 205A-41;
*270 (4) Propose any use within any historic site as designated in the National Register or Hawai'i Register as provided for in the Historic Preservation Act of 1966, Public Law 89-665, or chapter 6E;
(5) Propose any use within the Waikiki area of Oahu, the boundaries of which are delineated in the land use ordinance as amended, establishing the "Waikiki Special District”;
(6) Propose any amendments to existing county general plans where such amendment would result in designations other than agriculture, conservation, or preservation, except actions proposing any new county general plan or amendments to any existing county general plan initiated by a county;
(7) Propose any reclassification of any land classified as conservation district by the state land use commission under chapter 205; and
[ (8) ] Propose the construction of new, or the expansion or modification of existing helicopter facilities within the state which by way of their activities may affect any land classified as conservation district by the state land use commission under chapter 205; the shoreline area as defined in section 205A-41; or, any historic site as designated in the National Register or Hawai'i Register as provided for in the Historic Preservation Act of 1966, Public Law 89-665, or chapter 6E; or, until the statewide historic places inventory is completed, any historic site found by a field reconnaissance of the area affected by the helicopter facility and which is under consideration for placement on the National Register or the Hawai'i Register of Historic Places.