**In re SEPTEMBER 1975 GRAND JURY TERM.**

**Harvey W. THOMPSON, Secretary, Phillips Petroleum Company and Phillips Petroleum Company, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 76–1104.**

United States Court of Appeals, Tenth Circuit.

Argued March 11, 1976.

Decided March 22, 1976.

John W. Vardaman, Jr., Washington, D. C. (Edward Bennett Williams, Washington, D. C., Lewis H. Ferguson, III, Cambridge, Mass., Williams, Connolly & Califano, Washington, D. C., Edward J. Fauss, Oklahoma City, Okl., Boris Kostelanetz, John J. Tigue, Jr., New York City, and Lawrence S. Feld, with him on the brief), for appellants.

Charles E. Brookhart, Washington, D. C. (Scott P. Crampton, Asst. Atty., Gen., and Gilbert E. Andrews, Robert E. Lindsay, Charles J. Muller, and Thomas M. Atkinson, Attys., Tax Div., Dept., of Justice, Washington, D. C., with him on the brief), for appellee.

Before LEWIS, Chief Judge, and BREITENSTEIN and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Thompson, the Secretary of Phillips Petroleum Company, was adjudged to be in contempt for refusal to produce specified corporate records in response to a subpoena requiring such production in connection with grand jury proceedings. He was sentenced to 30 days confinement "unless said period of confinement is shortened by notice to the Court that the witness is willing to turn over the documents, the 35 exhibits, to the grand jury pursuant to the Court's order of February 4, 1976." We affirm.

The grand jury was conducting an investigation of alleged criminal activities by Phillips and various individuals. On September 26 and October 22, 1975, two subpoenas duces tecum were issued, one of which called for Thompson to appear before the grand jury and produce specified documents. Phillips moved to quash the subpoenas, the validity and form of which are not questioned on this appeal. Protracted negotiations ensued. Many documents were produced and the request for others was withdrawn. The nature of the investigation is such that both the government and Phillips desire secrecy.

Eventually, the dispute was limited to 35 documents which Phillips contended were protected by the attorney-client and work-product privileges. The government requested that the court examine the disputed documents in camera. Phillips objected. The court examined the documents in camera. On February 2 the court held an ex parte hearing with government counsel to determine whether the government had a prima facie need for the documents. On February 4 the court held that the government had made a prima facie showing of need, denied the motion to quash the subpoenas, and ordered the production of the documents.

Later discussion considered how appellate review might be obtained of the district court's orders. The court, government counsel, and counsel for Phillips were aware of the problems. The mandatory 30-day disposition requirement imposed on the court of appeals by 28 U.S.C. § 1826(b) was recognized. The applicability of that provision is conditioned upon "an order of confinement."

The court placed the disputed documents in the possession of Thompson who then appeared before the grand jury. He refused to surrender the documents. In so doing he claimed no personal rights. Thompson then appeared before the court, persisted in his recalcitrance, was found in contempt, was sentenced to confinement for 30 days, and was released on a $1,000 personal recognizance bond. A prompt appeal was taken. In briefs and arguments before the court of appeals Thompson was represented by counsel for Phillips.

Our decision in *Matter of Berry*, 10 Cir., 521 F.2d 179, 183–184, is dispositive of the case against Thompson in his individual capacity. He asserts no personal privilege and claims no constitutional right. If we limit our consideration to Thompson as an individual, the contempt order is valid and enforceable.

The question is whether the fact that Thompson acted in a representative capacity, as an agent of Phillips, is a defense to the contempt charge. Without consideration of the intricacies of the problem, we have determined to examine the merits. In so doing we recognize and rely on the statement of Mr. Vardaman, counsel for Phillips, made during oral argument of this cause before the court of appeals, that if the district court is affirmed on the merits the production order will be obeyed and Thompson will not be subjected to confinement. The statement expressly reserved the right to apply for certiorari review of the action by the court of appeals.[1]

Thus, we reach the merits of Phillips' claim of privilege. We have examined in camera all of the disputed documents. As to 28, the claim is attorney-client privilege. As to 7, the claim is work-product privilege. We consider first the claim of attorney-client privilege.

Phillips contends that the court erred in holding an ex parte hearing to determine whether the disputed documents contained communications in contemplation of, or in furtherance of, illegal activity. Rule 501 of the Federal Rules of Evidence provides that, with exceptions not here pertinent, the privilege of a witness "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Thus we are dealing with a

---

1. The pertinent colloquy between Chief Judge Lewis and attorney Vardaman was this:

"CHIEF JUDGE LEWIS: I don't know whether you're in a position to do that. But it might affect the extent of consideration the Court might have to give this case.

If we should decide on the merits that Judge Barrow's ruling was correct, are you in any position to say that you will comply with the Order of the Court?

MR. VARDAMAN: Yes, it will comply, Your Honor.

CHIEF JUDGE LEWIS: And Mr. Johnson (sic) [Thompson] won't serve 30 days?

MR. VARDAMAN: No, he won't. The only caveat I might add—

CHIEF JUDGE LEWIS: Do you have the authority to bind and represent to this Court that that will be the record? That if you should lose this on the merits, that you will comply with the Order of the Court and not prolong the proceeding by letting him serve 30 days?

MR. VARDAMAN: There is no question. Mr. Thompson—

CHIEF JUDGE LEWIS: I'm perfectly satisfied, and I don't know whether it has any significance to the feelings of the Court or not.

MR. VARDAMAN: Let me merely add one caveat to that so there will be absolutely no misunderstanding. Mr. Thompson is not going to serve any time, absolutely. The only thing I was going to say, if Your Honors rule foursquare against us, the only caveat I would make is we would, of course, examine the opinion and whether or not we were going to seek any higher review, I don't know.

CHIEF JUDGE LEWIS: Well, of course, you have that.

MR. VARDAMAN: But once there's a final Order, if it's against us—

CHIEF JUDGE LEWIS: I'm perfectly satisfied with your statements."

common law principle, not with a constitutional or statutory right or principle. Our concern is how the common law principle has been interpreted by the federal courts.

*Clark v. United States,* 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993, was concerned with contempt proceedings against a juror. One problem was the privilege relating to jury deliberations. With reference to analogous precedents the Court noted the attorney-client privilege and said, Ibid. at 15, 53 S.Ct. at 469, 77 L.Ed. at 1000:

> "The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law."

The Court also said, Ibid.:

> "To drive the privilege away, there must be 'something to give colour to the charge;' there must be *prima facie* evidence that it has some foundation in fact.' * * * When that evidence is supplied, the seal of secrecy is broken." (Citations omitted).

■ The attorney-client relationship is no shield for either the attorney or the client if the purpose of the communication is to further a crime or an intended crime. *United States v. Friedman,* 9 Cir., 445 F.2d 1076, 1086, *cert. denied* 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275, and *United States v. Hoffa,* 6 Cir., 349 F.2d 20, 37, *affirmed* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374. The problem is how the determination of existing or intended criminal activity may be made when a grand jury witness claims the privilege. Phillips asserts that the determination must be made in an adversary hearing.

This is not a case like *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973. The question there arose during the trial on the merits and concerned a defense demand for the grand jury testimony of four prosecution witnesses. The Court held that the defense was entitled to the grand jury minutes while the witnesses were available for cross-examination. Ibid. at 875, 86 S.Ct. at 1851, 16 L.Ed.2d at 986. *Alderman v. United States,* 394 U.S. 165, 89

S.Ct. 961, 22 L.Ed.2d 176, is not in point. In that case the government, after trial on the merits, had conceded certain electronic surveillance. The question was whether the records of such surveillance should be examined in camera by the court. The Court held, Ibid. at 182, 89 S.Ct. at 971, 22 L.Ed.2d at 191:

> " * * * surveillance records as to which any petitioner has standing to object should be turned over to him without being screened *in camera* by the trial judge."

The statements in those opinions relating to adversary proceedings were applicable to the situations there presented. They are not applicable to the grand jury proceedings with which we are concerned.

■ Proceedings related to the enforcement of a grand jury subpoena may not be converted into a preliminary trial on the merits. *United States v. Calandra,* 414 U.S. 338, 350, 94 S.Ct. 613, 621, 38 L.Ed.2d 561, 572. A minitrial such as Phillips proposes "would assuredly impede its [the grand jury's] investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *United States v. Dionisio,* 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67, 81.

■ The determination of whether the government shows a prima facie foundation in fact for the charge which results in the subpoena lies in the sound discretion of the trial court. We find no authority which holds that such determination must be made in an adversary hearing. The proceedings before the grand jury are secret. Breach of that secrecy rests in the sound discretion of the trial court. See *United States v. Parker,* 10 Cir., 469 F.2d 884, 888–889. Permission for an adversary hearing allows a contest on the question of criminal activity or not. That question is determinable only in a trial on the merits. The contest of a subpoena may not be converted into a preliminary trial. The constitutional right to due process does not encompass an adversary hearing on the question of whether a common law claim of privilege precludes grand jury examination

of documents. As said in *Dionisio*, 410 U.S. at 15–16, 93 S.Ct. at 772, 35 L.Ed.2d at 80:

> "A grand jury has broad investigative powers to determine whether a crime had been committed and who has committed it. The jurors may act on tips, rumors, evidence offered by the prosecutor, or their own personal knowledge. * * * No grand jury witness is 'entitled to set limits to the investigation that the grand jury may conduct.' * * * And a sufficient basis for an indictment may only emerge at the end of the investigation when all the evidence has been received." (Citations omitted.)

■ The district court did not abuse its discretion in holding an ex parte hearing on the question of prima facie cause. We have examined in camera the sealed transcript of the ex parte hearing, and agree that the government made a prima facie showing of need for the production of the documents.

We reject the argument that the action of the trial court was predicated on his previous in camera view of the documents. The showing was sufficient without any regard to those documents.

Phillips argues somewhat inconsistently that the court must make a determination of the pertinence of each document when viewed against the prima facie showing. Such proceeding would indeed convert the hearing of objections to the subpoena into a preliminary minitrial.

■ Our examination of the disputed documents convinces us that a potential relationship exists between the documents and the charges under investigation. No more is required when the concern is with a grand jury investigation. The admissibility of each and all of the documents is a matter for determination at the trial. Nothing said herein bears on such admissibility.

■ As to 7 documents the privilege claim is based on the work-product rule. With regard to that rule *Hickman v. Taylor*, 329 U.S. 495, 512, 67 S.Ct. 385, 394, 91 L.Ed. 451, 463, says:

> "But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order."

The "adequate reason" requirement is comparable to the "prima facie" requirement applicable to the attorney-client privilege. What we have said on the attorney-client privilege is pertinent here. The work-product privilege extends to the "production of material assembled by an attorney in preparation for impending litigation." *Natta v. Hogan,* 10 Cir., 392 F.2d 686, 693. No claim is made that the disputed documents were prepared in preparation for the charges under investigation. Phillips argues that the pending litigation requirement is satisfied because some of the documents were prepared in connection with anticipated litigation in a foreign country. We reject the argument. The government has shown adequate reason for production. The question of the work-product privilege is one for ultimate determination at the trial. We will not give an anticipatory answer.

■ Thompson was not personally involved with the disputed documents for which attorney-client or work-product privilege is claimed. His only corporate connection therewith was, and is, as a custodian. He cannot claim personal privilege for records held in his capacity as an officer of the corporation. See *Matter of Berry,* 10 Cir., 521 F.2d 179, 183, and cases there cited. For reasons which we have stated, his claims of privilege on behalf of the corporation are without merit. The documents must be produced.

Affirmed. No petition for rehearing may be filed. The mandate shall issue on March 30, 1976.