**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 15 1998**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

IN RE: GRAND JURY SUBPOENAS,
Jane Roe and John Doe.

-------------------------------------------------

INTERVENOR,

       Appellant,

   v.

UNITED STATES OF AMERICA,

       Appellee.

No. 97-3120

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 97-CV-2181)**

---

James R. Wyrsch (Jacqueline A. Cook, with him on the briefs), Wyrsch Hobbs
Mirakian & Lee, P.C., Kansas City, Missouri, for Appellant.

Tanya J. Treadway, Assistant United States Attorney (Jackie N. Williams, United
States Attorney, with her on the brief), Kansas City, Kansas, for Appellee.

---

Before **ANDERSON** and **KELLY**, Circuit Judges, and **BRETT,**[*] District Judge.

_____

**ANDERSON**, Circuit Judge.

_____


Intervenor-Appellant[1] appeals from the district court's order compelling the testimony of two attorneys, John Doe and Jane Roe, before a federal grand jury. He argues that the district court erred by: (1) applying the crime-fraud exception to attorney-client privilege to compel the attorneys' testimony; (2) applying the exception too broadly and refusing to review the questions to be asked of the attorneys before the grand jury; (3) refusing to disclose or to allow rebuttal of the government's in camera, ex parte showing that the crime-fraud exception applied; and (4) prohibiting the attorneys from invoking Intervenor's Fifth Amendment right against self-incrimination. The government challenges Intervenor's standing to bring the present appeal. We affirm.

_____

[*]The Honorable Thomas R. Brett, Senior U.S. District Judge, United States District Court of the Northern District of Oklahoma, sitting by designation.

[1]Because Appellant is the subject of a grand jury investigation, he is referred to herein as "Intervenor" pursuant to Fed. R. Crim. P. 6(e). Likewise, the hospital for which he worked will be referred to as "The Hospital." The two attorneys involved will be referred to as "John Doe" and "Jane Roe."

## BACKGROUND

Intervenor, several hospitals, doctors, and others are targets of an ongoing federal grand jury investigation. The Hospital, which employed Intervenor as President and Chief Executive Officer during the relevant time periods, responded to the grand jury's subpoenas duces tecum by producing numerous documents, some of which implicated the use of attorneys John Doe and Jane Roe to effectuate the crimes. Doe and Roe provided legal services to The Hospital during the time of the alleged criminal activity. The Hospital and Intervenor also sought the advice of other attorneys after the FBI initiated its investigation in 1992.

The grand jury issued subpoenas seeking the testimony of Doe and Roe before it on January 21, 1997. The Hospital, Doe, and Roe moved, on January 16, 1997, to quash the subpoenas because of the attorney-client privilege and the work-product doctrine (referred to hereinafter as "privileges" for convenience) and because the testimony would violate The Hospital's Sixth Amendment right to counsel. That same day, Intervenor moved to intervene and to quash the subpoenas, asserting the privileges on the basis of his relationship with the attorneys in his individual capacity, independent of the attorneys' relationship with The Hospital and its officers in their official capacities. On January 30, 1997, the government filed a response to the motions, arguing, inter alia, that the

parties had failed to prove entitlement to the privileges, that The Hospital's production of documents waived the privileges, and that the crime-fraud exception vitiates the privileges. In support of its position, the government simultaneously filed an in camera, ex parte good faith statement of evidence as to the alleged criminal activity, which Doe, Roe, The Hospital, and Intervenor have not been permitted to view.

The district court conducted a hearing on the motions on February 24, 1997. The court granted Intervenor's motion to intervene, but found that the crime-fraud exception to the attorney-client privilege applied because the government had established a prima facie case that The Hospital had engaged in criminal or fraudulent conduct, which was furthered by the aid of Roe and Doe. The court accordingly denied the motions to quash, subject to further development of the record, including specific questions and answers before the grand jury. The court refused to permit movants to view the government's good faith statement of evidence or to conduct a separate hearing at which movants could attempt to rebut the evidence, although the court did allow counsel for Intervenor to present arguments intended to rebut the prima facie showing.

On March 19, 1997, Ms. Roe appeared before the grand jury and asserted the attorney-client privilege and the work-product doctrine in response to virtually every question asked of her. She also vicariously raised Intervenor's Fifth

Amendment right against self-incrimination at his request. Mr. Doe appeared before the grand jury on April 2, 1997, and did the same. On March 25, 1997, the government moved to compel Ms. Roe's testimony, and it orally moved to compel Mr. Doe's testimony on April 2, 1997. Mr. Doe and Ms. Roe responded to the motion to compel, and The Hospital and Intervenor moved to intervene.

The court conducted hearings on the motions on April 2 and 7, 1997, during which the court heard the testimony of Mr. Doe, Ms. Roe, and Intervenor regarding any attorney-client relationship between the attorneys and Intervenor in his individual capacity. The court granted both motions to intervene because "for purposes of the motion to intervene, . . . the attorney-client privilege has been sufficiently established, and the Court would find that at relevant times [Ms. Roe and Mr. Doe] were providing joint representation to [The Hospital and to Intervenor]." Appellee's Supplemental App. at 305.

At the April 7, 1997, hearing, the government presented further in camera, ex parte evidence of the involvement of Ms. Roe and Mr. Doe in the criminal activity. The district court found that the crime-fraud exception applied, and the court orally sustained the government's motion to compel the testimony of Ms. Roe and Mr. Doe. The Hospital and Intervenor indicated their intent to file an appeal and moved to stay the proceedings pending the appeal. Subsequently, on May 1, 1997, the court entered its written order (1) sustaining the motion to

compel testimony of Ms. Roe and Mr. Doe; (2) overruling Intervenor's request that Ms. Roe and Mr. Doe be allowed to assert Intervenor's Fifth Amendment right against self-incrimination; and (3) granting the motion to stay pending appeal. Intervenor appeals the first two decisions.[2]

## DISCUSSION

In general, the granting of a motion to compel testimony is interlocutory in nature and is not an appealable order. In re Grand Jury Proceedings (Company X), 857 F.2d 710, 711 (10th Cir. 1988). The present case, however, comes within an exception to that general rule as announced in Perlman v. United States, 247 U.S. 7 (1918). Because Doe and Roe have indicated their intent to comply with the order rather than risk contempt, the order is appealable and we have jurisdiction pursuant to 28 U.S.C. § 1291. See In re Grand Jury Proceedings (Company X), 857 F.2d at 711-12; In re Grand Jury Proceedings (Vargas), 723 F.2d 1461, 1466 (10th Cir. 1983); see also United States v. Nixon, 418 U.S. 683,

---

[2]Mr. Doe and Ms. Roe did not appeal the decision. The Hospital appealed, but, upon its motion, the appeal was dismissed. Pursuant to a settlement agreement with the government, The Hospital agreed to waive its prior assertion of the attorney-client privilege and the work-product doctrine as to any document or information concerning contracts between it and the doctors from September 1, 1984, to February 1, 1995. See Appellee's Supplemental App. at 331-32.

690-91 (1974); In re Grand Jury Subpoenas Dated December 7 and 8, 40 F.3d 1096, 1099 (10th Cir. 1994).

### I. Attorney-Client Privilege and Standing

The government argues that Intervenor lacks standing to bring this appeal because he was never a client of Doe or Roe in his individual capacity, and, therefore, he cannot assert the attorney-client privilege. When the district court granted Intervenor's motion to intervene, it found that the attorney-client privilege existed for the limited purposes of moving to quash the testimony of Roe and Doe and of objecting to the government's motion to compel the testimony. See Appellee's Supplemental App. at 288, 305. At the time of the court's decision, The Hospital was still involved in the case and was asserting the attorney-client privilege in an attempt to prevent Roe and Doe from testifying before the grand jury. Subsequently, The Hospital and the government reached a settlement agreement, and The Hospital no longer asserts the attorney-client privilege for itself or its officers so as to prevent the grand jury testimony of Doe and Roe. Intervenor, therefore, must prove the existence of an attorney-client privilege for himself in his individual capacity.

We review the issue of standing de novo. See Committee to Save the Rio Hondo v. Lucero, 102 F.3d 445, 447 (10th Cir. 1996). We review the factual

findings underlying the court's attorney-client privilege ruling for clear error and purely legal questions de novo. See Frontier Refining Inc. v. Gorman-Rupp Co., 136 F.3d 695, 699 (10th Cir. 1998).

"The doctrine of standing 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" Lucero, 102 F.3d at 447 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). To satisfy the standing requirement, "a party must establish three elements: (1) injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) likelihood that the injury will be redressed by a favorable decision." Wilson v. Glenwood Intermountain Properties, Inc., 98 F.3d 590, 593 (10th Cir. 1996). In the present case, Intervenor's ability to satisfy the elements required for standing is inextricably tied to his ability to claim the attorney-client privilege. If the attorney-client privilege does exist between Intervenor in his individual capacity and Attorneys Roe and Doe, then Intervenor has standing. See Henderson v. United States, 815 F.2d 1189, 1192 (8th Cir. 1987); Young v. Taylor, 466 F.2d 1329, 1333 (10th Cir. 1972).

The party seeking to assert the attorney-client privilege has the burden of establishing its applicability. Motley v. Marathon Oil Co., 71 F.3d 1547, 1550 (10th Cir. 1995). The privilege is governed by the common law and is to be strictly construed. Trammel v. United States, 445 U.S. 40, 47, 50 (1980); In re

Grand Jury Proceedings of John Doe v. United States, 842 F.2d 244, 245-46 (10th Cir. 1988). "The purpose behind the attorney-client privilege is to preserve confidential communications between attorney and client." In re Grand Jury Subpoenas (United States v. Anderson), 906 F.2d 1485, 1492 (10th Cir. 1990). Where a corporate client is involved, "special problems" arise because, "[a]s an inanimate entity, a corporation must act through agents." Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985). Any privilege resulting from communications between corporate officers and corporate attorneys concerning matters within the scope of the corporation's affairs and the officer's duties belongs to the corporation and not to the officer. See United States v. International Bhd. of Teamsters, 119 F.3d 210, 215 (2d Cir. 1997); In re Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120, 124 (3d Cir. 1986); see also Weintraub, 471 U.S. at 348-49; Upjohn Co. v. United States, 449 U.S. 383, 394-95 (1981). Thus, Intervenor has no power to assert the attorney-client privilege except as to confidential communications with Doe and Roe in his individual capacity, which is unlikely to be anything more than a minute portion of the total communications sought by the grand jury.

The Second and Third Circuits have employed the following test to determine whether an officer may assert a personal privilege with respect to

conversations with corporate counsel despite the fact that the privilege generally belongs to the corporation:

> First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And, fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company.

International Bhd. of Teamsters, 119 F.3d at 215 (quoting In re Bevill, 805 F.2d at 123 (quoting In re Grand Jury Investigation, 575 F. Supp. 777, 780 (N.D. Ga. 1983))). A personal privilege does not exist merely because the officer "reasonably believed" that he was being represented by corporate counsel on an individual basis. International Bhd. of Teamsters, 119 F.3d at 216. In certain circumstances, reasonable belief may be enough to create an attorney-client *relationship*, but it is not sufficient here to create a *personal* attorney-client *privilege*. See Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1384 (10th Cir. 1994) (holding, in context of motion to disqualify counsel, attorney-client *relationship* exists where party submits confidential information to a lawyer and it does so with a reasonable belief that the lawyer was acting as its attorney).

The district court heard the testimony of Intervenor, Ms. Roe, and Mr. Doe concerning the existence of a personal attorney-client privilege. Each of them testified that Intervenor sought the advice of the attorneys in his individual capacity and that confidential communications occurred between them as to his personal situation. Doe and Roe testified that they recognized a potential conflict of interest. The court concluded that "for purposes of the motion to intervene, . . . the attorney-client privilege has been sufficiently established, and the Court would find that at relevant times [Ms. Roe and Mr. Doe] were providing joint representation to [The Hospital and to Intervenor]." Appellee's Supplemental App. at 305. In making this finding, the district court necessarily relied on the credibility of the witnesses before it and on facts which have not been demonstrated to us to be clearly erroneous.

Accordingly, adopting and applying the test employed by the Second and Third Circuits, we conclude that a limited attorney-client privilege exists between Intervenor and Roe and Doe. Our holding is an extremely limited one and does not extend to communications made while third parties were present nor does it extend to communications in which both corporate and individual liability were discussed. It includes only that very small portion of communications in which Intervenor sought legal advice as to his personal liability without regard to any

-11-

corporate considerations. To the limited extent there is a privilege then, Intervenor has standing.

## II. Application of Crime-Fraud Exception

Next, we address, whether, in light of the limited attorney-client privilege, that privilege is vitiated by the crime-fraud exception. We review the district court's granting of the motion to compel and its determination that the crime-fraud exception applies for abuse of discretion. In re Grand Jury Proceedings (Company X), 857 F.2d at 712. We will not disturb the court's exercise of its discretion unless we have a "definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Moothart v. Bell, 21 F.3d 1499, 1504 (10th Cir. 1994) (quotation omitted).

The importance and sanctity of the attorney-client privilege is well established. See Upjohn v. United States, 449 U.S. 383, 389 (1981). Yet, the privilege is not worthy of protection "at all costs" as Intervenor suggests. Appellant's Br. at 49. Because it "'withhold[s] relevant information from the factfinder,'" United States v. Zolin, 491 U.S. 554, 562 (1989) (citation omitted), the "'attorney-client privilege does not apply where the client consults an attorney to further a crime or fraud.'" Motley v. Marathon Oil Co., 71 F.3d 1547, 1551

-12-

(10th Cir. 1995) (quoting In re Grand Jury Proceedings (Company X), 857 F.2d 710, 712 (10th Cir. 1988)). "It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy,' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." Zolin, 491 U.S. at 563 (citations omitted). The crime-fraud exception applies to both the attorney-client privilege and the work-product doctrine. In re Grand Jury Proceedings (Vargas), 723 F.2d 1461, 1467 (10th Cir. 1983).

To invoke the crime-fraud exception, the party opposing the privilege must present prima facie evidence that the allegation of attorney participation in the crime or fraud has some foundation in fact. Motley, 71 F.3d at 1551; In re Grand Jury Proceedings (Vargas), 723 F.2d at 1467. The evidence must show that the client was engaged in or was planning the criminal or fraudulent conduct when it sought the assistance of counsel and that the assistance was obtained in furtherance of the conduct or was closely related to it. See In re Grand Jury Investigation (Schroeder), 842 F.2d 1223, 1226 (11th Cir. 1987). The exception does not apply if the assistance is sought only to disclose past wrongdoing, see Zolin, 491 U.S. at 562, but it does apply if the assistance was used to cover up and perpetuate the crime or fraud. See In re Grand Jury Proceedings (Company X), 857 F.2d at 712; see also In re Grand Jury Proceedings (Doe), 102 F.3d 748,

749-51 (4th Cir. 1996) (applying exception where client used lawyers, without their knowledge, to misrepresent or to conceal what the client had already done); In re Richard Roe, Inc., 68 F.3d 38, 40 (2d Cir. 1995) (noting that exception applies where "communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity"); In re Sealed Case, 754 F.2d 395, 402 (D.C. Cir. 1985) ("To the limited extent that past acts of misconduct were the subject of the cover-up that occurred during the period of representation, however, then past violations properly may be a subject of grand jury inquiry.").

Although the exact quantum of proof necessary to meet the prima facie standard has not been decided by the Supreme Court, see Zolin, 491 U.S. at 563-64 & n.7, several circuits have attempted to define precisely what the standard requires. See, e.g., In re Richard Roe, Inc., 68 F.3d 38, 40 (2d Cir. 1995) (probable cause to believe a crime or fraud has been committed); Haines v. Liggett Group Inc., 975 F.2d 81, 95-96 (3d Cir. 1992) (evidence that if believed by the fact finder would be sufficient to support a finding that the elements of the crime-fraud exception were met); In re International Sys. & Controls Corp. Sec. Litig., 693 F.2d 1235, 1242 (5th Cir. 1982) (evidence such as will suffice until contradicted and overcome by other evidence); United States v. Davis, 1 F.3d 606, 609 (7th Cir. 1993) (evidence presented by the party seeking application of

the exception is sufficient to require the party asserting the privilege to come forward with its own evidence to support the privilege); In re Grand Jury Proceedings (Corporation), 87 F.3d 377, 381 (9th Cir. 1996) (reasonable cause to believe attorney was used in furtherance of ongoing scheme); In re Grand Jury Investigation (Schroeder), 842 F.2d 1223, 1226 (11th Cir. 1987) (evidence that if believed by the trier of fact would establish the elements of some violation that was ongoing or about to be committed); In re Sealed Case, 107 F.3d 46, 50 (D.C. Cir. 1997) (evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud). We need not articulate the exact quantum of proof here because under any of these announced standards, the government has made a prima facie showing.

The court below found that the government had "established by substantial and competent evidence a prima facie case that [The Hospital and Intervenor] have committed a crime, that [The Hospital and Intervenor] used the legal services of Roe and Doe in furtherance of that crime, and that Roe and Doe were aware of the criminal conduct." Appellant's App. Vol. II at 226. We have reviewed the record, including the government's ex parte, in camera submission, and conclude that the district court did not abuse its discretion. The evidence presented constitutes a prima facie showing that the services of Mr. Doe and Ms. Roe were used both to effectuate the crime or fraud and to conceal it. Thus, the

-15-

crime-fraud exception vitiates the limited attorney-client privilege between Intervenor and Roe and Doe.[3]

### III.  Scope of the Crime-Fraud Exception

Intervenor asserts that even if the exception does apply, the district court's application of the exception lacked specificity and was overly broad.  The court held that because the exception applies, Roe and Doe could not "avoid testifying as to any act, communication, document or other matter concerning the relationships and agreements (whether formal or informal, written or unwritten, executed or proposed) between [The Hospital and the doctors, two of their companies, its officers or employees] during the time period September 1, 1984 through 1994."  Appellant's App. Vol. II at 226-27.

Intervenor argues that the time period defined by the court is arbitrary and covers too great a period and that, as a result, it may include communications that do not fall within the crime-fraud exception.  Given our review of the record, we disagree.  The court properly delineated a reasonable time period and further narrowed the focus to questions regarding the relationship at issue.  Accordingly,

---

[3]We by no means imply that Doe and Roe are guilty of any crimes or that they were, in fact, culpable in any way.  Indeed, no charges have been filed against them.

we conclude that the court did not err in defining the scope of the crime-fraud exception.

Similarly, Intervenor contends that the district court's decision to apply the crime-fraud exception was error because it refused to review, in camera, the government's proposed questions to Doe and Roe. Without such a review, he argues, the court could not have properly determined whether some of the questions—and their answers—would fall outside the scope of the exception.

In In re Grand Jury Proceedings (Vargas), 723 F.2d at 1467, we held that "once the trial judge has concluded that the privilege does not apply because the government has made such a prima facie showing, the trial court need only conduct an in camera inspection of the documents if there is a possibility that some of them may fall outside the scope of the exception to the privilege." We have not addressed whether it is appropriate for a similar "inspection" to be made of testimony to be presented to a grand jury.

We recognize the need to balance the confidentiality of privileged information outside the scope of the crime-fraud exception and the conservation of judicial resources. We have encouraged the district courts not to allow the determination of the applicability of the crime-fraud exception to turn into mini-trials that would waste resources and delay the grand jury proceedings. See In re Grand Jury Proceedings (Company X), 857 F.2d at 712; In re Grand Jury

Proceedings (Vargas), 723 F.2d at 1467.  Accordingly, we will not require that the district court conduct a detailed review of all questions and answers prior to their presentation to the grand jury.  Instead, district courts should define the scope of the crime-fraud exception narrowly enough so that information outside of the exception will not be elicited before the grand jury.  However, if, before ordering testimony in front of the grand jury, the district court, within its discretion, believes an in camera examination of the witness or the questions to be asked of the witness is needed to ensure the scope of the inquiry will not be too broad, it may do so.[4]  See In re Richard Roe, Inc., 68 F.3d at 41.

At the April 7, 1997, hearing in this case, the court did hear objections to specific questions that had been asked before the grand jury previously.  The court concluded that not only did they fall within the scope of the crime-fraud exception, but also that much of the information sought did not even relate to anything that could be considered privileged.  Appellee's Supplemental App. at 309-29.  In addition, the court's order makes it clear that it had, in fact, reviewed the questions already asked of Roe and Doe.  Appellant's App. Vol. II at 226.

---

[4]We recognize that in one case, the D.C. Circuit required the district court to engage in a question-by-question determination of the scope of the crime-fraud exception "given the nebulous distinction in this case between prior acts that remain protected by the attorney-client privilege and prior acts forming the basis of the ongoing cover-up."  In re Sealed Case, 754 F.2d 395, 402-03 (D.C. Cir. 1985).  We believe, as the Second Circuit did in In re Richard Roe, Inc., 68 F.3d at 41, that the narrow scope of the district court's order makes such a *mandatory* review unnecessary.

Given the court's review of the questions and its limited definition of the scope of the crime-fraud exception, we do not believe it abused its discretion in failing to set forth, question by question, what could and could not be asked of Doe and Roe. The court's order appropriately requires Roe and Doe "to answer the questions previously posed [before the grand jury], as well as any other questions on those topics." Appellant's App. Vol. II at 227.

## IV. Rebuttal to Government's Prima Facie Showing

Intervenor next alleges that the district court erred because it believed it had no discretion (1) to disclose to Intervenor the government's ex parte, in camera submission, and (2) to hear rebuttal evidence from Intervenor as to the government's prima facie showing of the crime-fraud exception.

In In re Grand Jury Proceedings (Vargas), 723 F.2d 1461 (10th Cir. 1983), we faced Intervenor's present argument, minus the allegation of the district court's misperception of its authority. We stated as follows:

> Petitioner . . . argues that certain procedures must be followed, including an opportunity for the attorney and client to rebut the prima facie evidence and to be present at any hearing which is intended to establish such a prima facie foundation. Petitioner misconstrues the law in this circuit. As this court held in its opinion In re September 1975 Grand Jury Term, 532 F.2d 734 (10th Cir. 1976), "[t]he determination of whether the government shows a prima facie foundation in fact for the charge which results in the subpoena lies in the sound discretion of the trial court." Id. at 737. *In particular, that determination can be made ex-parte and a "preliminary*

-19-

*minitrial" is not necessary.* Id. at 737-38. Furthermore, the prima facie foundation may be made by documentary evidence or good faith statements by the prosecutor as to testimony already received by the grand jury.

In re Grand Jury Proceedings (Vargas), 723 F.2d at 1467 (emphasis added) (citations to the record omitted). Such expedited procedures do not violate due process. See In re Grand Jury Proceedings, Thursday Special Grand Jury, 33 F.3d 342, 352-53 (4th Cir. 1994); In re John Doe, Inc., 13 F.3d 633, 637 (2d Cir. 1994).

This framework is grounded in the importance of a properly functioning grand jury. As the Supreme Court has stated, "[a]ny holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." United States v. Dionisio, 410 U.S. 1, 17 (1973); see also In re September 1975 Grand Jury Term, 532 F.2d at 737. Moreover, the reasons for keeping a tight lid on in camera documents containing grand jury testimony and on evidence gathered during criminal investigations are legion and obvious. See, e.g., In re Grand Jury 95-1, 118 F.3d 1433, 1439 (10th Cir. 1997).

Accordingly, the district court has the discretionary authority to do as Intervenor requests, and we believe the court understood that authority. Intervenor points to the February 24, 1997, hearing to show that the court did not

-20-

understand it had discretionary authority. There, the district court queried, "if I let you see the contents of [the government's] showing, [aren't you] just setting this up to get me involved in having the sort of mini trial on the criminal allegations that the courts have said I shouldn't be involved in?" Appellant's App. Vol. II at 240. Unfortunately for Intervenor, the court's question implies that it understood it had authority, pursuant to the familiar Fed. R. Crim. P. 6(e), to make the submission available to Intervenor. Our review of the record also indicates that the court understood it had the authority to hear rebuttal evidence.

The district court did not abuse its discretion in refusing to allow Intervenor to review the contents of the government's ex parte, in camera submission and in refusing to hear rebuttal evidence. The court reviewed the many briefs that had been filed and actually entertained some of counsel's arguments intended to rebut the government's prima facie showing. See, e.g., Appellant's App. Vol. II at 241-51. After reviewing the briefs, hearings, and the government's submission, we find no abuse in either the district court's refusal to conduct a separate rebuttal hearing or its refusal to reveal the contents of the government's submission.

## V. Vicarious Assertion of Intervenor's Fifth Amendment Rights

Finally, Intervenor claims that Roe and Doe should be allowed to assert his Fifth Amendment right against self-incrimination. We review the district court's denial of this claim de novo because it involves a question of standing. See United States v. Anderson, 778 F.2d 602, 606 n.3 (10th Cir. 1985); United States v. Skolek, 474 F.2d 582, 584 (10th Cir. 1973); see also Committee to Save the Rio Hondo v. Lucero, 102 F.3d 445, 447 (10th Cir. 1996).

"There is no constitutional right not to be incriminated by the testimony of another. . . . The privilege against self-incrimination is solely for the benefit of the witness and is purely a personal privilege of the witness, not for the protection of other parties." Skolek, 474 F.2d at 584. The Fifth Amendment protects against "'compelled self-incrimination, not (the disclosure of) private information.'" Fisher v. United States, 425 U.S. 391, 401 (1976) (quoting United States v. Nobles, 422 U.S. 225, 233 n.7 (1975)). Thus, a "'party is privileged from producing evidence but not from its production.'" Fisher, 425 U.S. at 399 (quoting Johnson v. United States, 228 U.S. 457, 458 (1913)). The relevant question for our analysis, then, is whether the information was obtained through compulsion, not whether the information was private.

In certain circumstances, where an attorney is being compelled to produce *documents* that his or her client could personally bar from production under the

-22-

Fifth Amendment, "the *attorney* to whom they are delivered for the purpose of obtaining legal advice should also be immune from subpoena." Fisher, 425 U.S. at 396. However, the instant case is different because the information sought is the content of oral statements made by Intervenor that were not compelled. In re Feldberg, 862 F.2d 622, 629 (7th Cir. 1988); In re Grand Jury Proceedings (Wilson), 760 F.2d 26, 27 (1st Cir. 1985). Compulsion of the attorneys' testimony as to voluntary statements made by the client does not, therefore, implicate the Fifth Amendment's protection of the client against "compulsory self-incrimination." Feldberg, 862 F.2d at 629. The statements might be protected by the attorney-client privilege, but not where, as here, the crime-fraud exception applies.

Thus, because there is no indication that Intervenor's statements to his attorney were compelled and because the crime-fraud exception vitiates any attorney-client privilege, the district court correctly ordered that Ms. Roe and Mr. Doe could not vicariously assert Intervenor's Fifth Amendment rights before the grand jury.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court.