**Christine R. BERROTH, Plaintiff,**

v.

**KANSAS FARM BUREAU MUTUAL INSURANCE COMPANY, INC. d/b/a Kansas Farm Bureau, Defendant.**

**Susan "Sue" Brown, Plaintiff,**

v.

**Kansas Farm Bureau Mutual Insurance Company, Inc. d/b/a Kansas Farm Bureau, Defendant.**

Nos. 01–2095–CM, 01–2096–CM.[1]

United States District Court,
D. Kansas.

Jan. 17, 2002.

---

1. These two lawsuits are not consolidated. However, the cases are related inasmuch as they both involve the same defendant, they were both brought by plaintiffs who are former employees of that defendant, they both involve the same attorneys, and they are both on essentially the same scheduling timeline. The related nature of these cases is relevant because the deposition of Scott D. Campbell, defendant's designated corporate representative, was taken simultaneously in both cases on September 7, 2001, and the two motions presently before the court arise from Campbell's responses during that deposition. After Campbell's deposition, the plaintiffs in both cases filed motions to compel based on the crime-fraud exception to the attorney-client privilege. Because of the related nature of these two motions, the court is deciding them jointly in this Memorandum and Order.

Gregory M. Dennis, Richard W. Noble, The Noble Group, P.C., Kansas City, MO, for plaintiffs.

Terry L. Mann, Rebecca A. Hesse, Martin, Pringle, Oliver, Wallace & Spikes, L.L.P., Wichita, KS, for defendants.

## MEMORANDUM AND ORDER

O'HARA, United States Magistrate Judge.

### I. Introduction.

Pursuant to Fed.R.Civ.P. 37(a)(2)(B), this case comes before the court on the motions of the plaintiffs, Christine R. Berroth and Susan "Sue" Brown, to compel Scott D. Campbell, the designated corporate representative of the defendant, Farm Bureau Mutual Insurance Company, to answer certain questions asked during a deposition on September 7, 2001 (doc. 36 in *Berroth* & doc. 45 in *Brown* ).[2] Defendant has responded (docs. 48 & 63, respectively), and plaintiffs have replied (docs. 54 & 69, respectively).[3] As explained below, plaintiffs' motions are denied.

### II. Background.

The plaintiffs in these two lawsuits allege they were subjected to gender discrimination by their former employer, defendant Farm Bureau. Specifically, plaintiff Berroth's allegations arise from defendant's failure to promote her to the position of an adjuster, and plaintiff Brown's allegations arise from defendant's failure to promote her from the position of Claims Adjuster I to the position of Claims Adjuster II within a year of her transfer to the Olathe office. Before filing the present lawsuits, both plaintiffs filed charges against defendant with the Kansas Human Rights Commission (KHRC). In response to inquiries from KHRC, defendant submitted various documents and information including, among other things, affidavits from Campbell, who is the manager of defendant's Olathe office. Defendant's in-house counsel, Ed Horne, consulted with Campbell and prepared these affidavits, then Campbell signed them.

In Campbell's affidavit responding to plaintiff Berroth's charge, Campbell stated that, "there is almost an equal balance of men and women adjusters in my region." In the affidavit responding to plaintiff Brown's charge, Campbell made a similar statement that, "I now have an adjusting staff that is evenly balanced as to gender." Discovery in these lawsuits has revealed that, at the time Campbell made these statements, the ratio of men-to-women was actually 11–to–4, 8–to–4, 7–to–2, or two-thirds. The precise ratio is unclear; what is clear is that the ratio of men to women was not equal.

Also in the affidavit responding to plaintiff Brown's charge, Campbell stated that, "I selected her over a male adjuster who also wanted the opening" and that, "[a]s in [plaintiff Brown's] situation, [I selected another female employee] over a male adjuster candidate." Discovery in these lawsuits has revealed that, in fact, Campbell interviewed only plaintiff Brown and another female adjuster—not a male adjuster—for the position.

During Campbell's deposition, plaintiffs' counsel attempted to inquire into the communications that transpired between Campbell and Horne during preparation of Campbell's

---

**2.** For ease of reference, Case No. 01–2095–CM will be referred to in this Memorandum and Order as *"Berroth,"* and Case No. 01–2096–CM will be referred to as *"Brown."* By comparison, the court will refer to the individual plaintiffs as "plaintiff Berroth" and "plaintiff Brown."

**3.** Mindful that this case has far to go before it reaches trial, the court wishes to comment on the formatting of plaintiff's motions and briefs. Plaintiff's reply briefs are two-sided. Approximately half of the text is in underlined, italicized, and/or bold-faced type. The footnotes are numerous (twenty-seven in plaintiff's eighteen-page reply in *Berroth,* and nineteen in plaintiff's seven-

teen-page reply in *Brown*) and voluminous. Oddly, even routine and uncontested motions for extensions filed by plaintiff's counsel follow a similar format. *See, e.g.,* docs. 51 & 53 in *Berroth,* and doc. 66 in *Brown.* This general approach serves to create documents that are so "busy" that they are unnecessarily difficult to read. With all due respect to plaintiff's counsel, these pleadings represent the antithesis of effective advocacy. In the future, the court would greatly appreciate it if plaintiff's counsel would submit single-sided documents, use underlined, italicized, and/or bold-faced type sparingly, and minimize the use of footnotes.

affidavits. Specifically, plaintiffs' counsel asked Campbell the following questions:

1. Did you speak to Mr. Horne about the statement in this affidavit that you selected [plaintiff Brown] over a male candidate?

2. When you spoke with Mr. Horne, did you make any comments to him about why you wanted to speak to him about your affidavit?

3. What did you tell Mr. Horne about in preparing this affidavit about the statement in this affidavit that you made under oath twice that "I", [sic] referring to yourself, "selected [plaintiff Brown] over a male adjustor [sic] who also wanted the opening"?

4. What did Mr. Horne tell you about your statement in this affidavit that "I selected [plaintiff Brown] over a male adjustor [sic] who also wanted the opening"?

Defense counsel instructed Campbell not to answer these questions on the basis of the attorney-client privilege. Plaintiffs now seek an order compelling Campbell to answer these questions.

### III. Analysis.

■ A party objecting to discovery on grounds of privilege has the burden to establish the privilege. *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir.1995). In this case, the information sought by the plaintiffs appears to fall within the attorney-client privilege, and none of the parties contends that it is not privileged. Therefore, the court finds defendant has met its burden of proving that the information sought by the plaintiffs is privileged.

Rather than disputing the existence of the attorney-client privilege in this case, the parties' point of disagreement is whether the information sought by the plaintiffs falls within the crime-fraud exception to the privilege. In these lawsuits, the plaintiffs assert federal law claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and state law claims under the Kansas Act Against Discrimination, K.S.A. 44–1011 et seq. Therefore, under Fed.R.Evid. 501, the court will consider both federal law and state law in deciding the applicability of the crime-fraud exception. *Motley*, 71 F.3d at 1551; *Hinsdale v. City of Liberal*, 961 F.Supp. 1490, 1493–94 (D.Kan. 1997).

■ Under Kansas law, the attorney-client privilege does not extend "to a communication if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the commission or planning of a crime or a tort." K.S.A. 60–426(b)(1). "Sufficient evidence" for purposes of the crime-fraud exception is "that which constitutes a prima facie case." *Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 501 (D.Kan.1997) (citing *Wallace, Saunders, Austin, Brown & Enochs, Chtd. v. Louisburg Grain Co.*, 250 Kan. 54, 61, 824 P.2d 933, 939 (1992)). A prima facie case consists of "evidence which, if left unexplained or uncontradicted, would be sufficient to carry the case to the jury and sustain a verdict in favor of the plaintiff on the issue it supports." *Wallace, Saunders*, 250 Kan. at 61, 824 P.2d at 939 (quotation omitted).

■ Similarly, under federal law, the "attorney-client privilege does not apply where the client consults an attorney to further a crime or fraud." *Motley*, 71 F.3d at 1551 (quotation omitted). The party claiming the exception applies "must present prima facie evidence that the allegation ... has some foundation in fact." *Id.* The trial court has discretion to determine whether the party has established a prima facie case, *id.*, but it is unclear what, precisely, constitutes a prima facie case for establishing the crime-fraud exception under federal law. *United States v. Zolin*, 491 U.S. 554, 563–64 n. 7, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) ("The quantum of proof ... remains ... subject to question").

Other circuits have attempted to define precisely what the prima facie standard requires:

> *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir.1995) (probable cause to believe a crime or fraud has been committed);

*Haines v. Liggett Group, Inc.*, 975 F.2d 81, 95–96 (3d Cir.1992) (evidence that if believed by the fact finder would be sufficient to support a finding that the elements of the crime-fraud exception were met); *In re International Sys. & Controls Corp. Sec. Lit.*, 693 F.2d 1235, 1242 (5th Cir. 1982) (evidence such as will suffice until contradicted and overcome by other evidence); *United States v. Davis*, 1 F.3d 606, 609 (7th Cir.1993) (evidence presented by the party seeking application of the exception is sufficient to require the party asserting the privilege to come forward with its own evidence to support the privilege); *In re Grand Jury Proceedings (Appeal of Corporation)*, 87 F.3d 377, 381 (9th Cir. 1996) (reasonable cause to believe attorney was used in furtherance of ongoing scheme); *In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir. 1987) (evidence that if believed by the trier of fact would establish the elements of some violation that was ongoing or about to be committed); *In re Sealed Case*, 107 F.3d 46, 50 (D.C.Cir.1997) (evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud).

*In re Grand Jury Subpoenas*, 144 F.3d 653, 660 (10th Cir.1998). However, the Tenth Circuit has not yet articulated its precise standard for what is required to establish a prima facie case under the crime-fraud exception. *Id.*

■ In this particular case, the court is guided by the principle that, at a bare minimum, before the court even has an obligation to consider whether to conduct an in camera review of the privileged material, the party invoking the crime-fraud exception must make a threshold showing of a factual basis that is "adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Zolin*, 491 U.S. at 572, 109 S.Ct. 2619 (internal citations and quotations omitted) (italics in original); *accord Burton v. R.J. Reynolds Tobacco Co.*, 167 F.R.D. 134, 141 (D.Kan.1996) (citing *Zolin*).

■ In this case, the plaintiffs do not appear to argue, nor have they demonstrated, that a prima facie case for actionable fraud exists. Under Kansas law, "[a]ctionable fraud includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or reckless made with a disregard for the truth, where another party *justifiably relies* on the statement and acts to his injury." *K–B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1156 (10th Cir.1985) (quoting *Lentz Plumbing Co. v. Fee*, 235 Kan. 266, 270, 679 P.2d 736, 742 (1984)) (emphasis added). Neither plaintiff has alleged, much less demonstrated, that she justifiably relied on the truth of the statements in Campbell's affidavits. *See, e.g., Hall v. Martin*, Case No. 99–1092–JTM, 1999 WL 760216, at *2 (D.Kan. Aug. 20, 1999) (finding that a plaintiff who was seeking to invoke the crime-fraud exception failed to allege the justifiable reliance necessary to state a claim for actionable fraud under Kansas law).

The plaintiffs' predominant theory is that the statements in Campbell's affidavits amount to a crime, specifically, perjury. K.S.A. 21–3805 provides:

> (a) Perjury is *intentionally, knowingly,* and falsely:
>> (1) Swearing, testifying, affirming, declaring or subscribing to any material fact upon any oath or affirmation legally administered in any cause, matter or proceeding before any court, tribunal, public body, notary public. . . .

(Emphasis added.)

Plaintiffs argue that the court can infer Campbell's intent to commit perjury based on the following combination of factors: (1) Campbell's statements regarding "an equal balance of men and women adjusters" and "an adjusting staff that is evenly balanced as to gender" were untrue; (2) Campbell's statements that he selected plaintiff Brown for a position over a male adjuster candidate were untrue and that he made, not just one, but *two* statements to this effect in his affidavit; (3) Campbell testified during his deposition that affidavits are rather important and, therefore, he makes sure everything is cor-

rect in affidavits before he signs them; and (4) Campbell testified during his deposition that he read through the affidavits entirely before signing them.

■ Under the facts of this case, the court holds that the plaintiffs have failed to present sufficient evidence to make out a prima facie case that Campbell acted with the intent necessary to be guilty of perjury. The plaintiffs have essentially pointed to nothing more than their interpretation of these statements as being untrue. The court is unwilling to make the inference advocated by plaintiffs for the following reasons.

First, the court looks to the context and the precise wording of Campbell's statement. In response to plaintiff Berroth's charge, Campbell stated: "When I became the Regional Claims Manager eight years ago the region had only one female adjuster. Presently, there is almost an equal balance of men and women adjusters in my region." Similarly, in response to plaintiff Brown's charge, he stated: "When I took over the region approximately 8 years ago, the region had only one female adjuster. I now have an adjusting staff that is evenly balanced as to gender." When the second sentences in each statement are read as follow-ups to the first sentences, it suggests that Campbell intended the second sentences to convey that the proportion of female adjusters has increased since he was assigned responsibility for the region eight years ago. Furthermore, Campbell used the imprecise words "balance" and "balanced" rather than stating there was an equal or even "number" of men and women, and he qualified one of these statements with the term "almost." This lack of precision indicates that Campbell did not intend his statements to convey exact personnel figures with absolutely accuracy, but, rather, that he intended to convey estimated proportions.

Second, the court looks to Campbell's testimony during his deposition regarding his intent. That is, he testified that he did not intend these statements to suggest that there was a 50/50 split between men and women. Rather, he meant to convey that there was a "good balance, a good mix" at the Olathe office. Furthermore, the precise computation of the ratio of men-to-women adjusters varies depending on a number of factors such as whether two male appraisers are considered to be adjusters and whether a male bodily injury specialist is considered to be an adjuster. Also, Campbell perceives the terms "adjuster" and "adjusting staff" to be interchangeable, and he considered two female office claims representatives to be a part of the adjusting staff.

Third, the court is entirely unpersuaded by plaintiff Brown's argument that Campbell's statements that he "selected" plaintiff Brown for a position over a male adjuster candidate were necessarily untrue. Plaintiff makes much of the fact that Campbell interviewed only her and another female adjuster for the position. However, Campbell also recalled talking to Tracy Gawith, a male employee in defendant's Salina office, regarding the position. Simply because Campbell did not interview Gawith for the position does not mean that Campbell did not consider him as a candidate for the position. Thus, the court is not persuaded that Campbell's statement that he "selected" plaintiff Brown for the position over Gawith is untrue.

Perhaps most importantly, based on the state of the record, the court has no reason to question Campbell's honesty and integrity. Plaintiff has presented no evidence that Campbell or defendant have attempted to withhold evidence during the KHRC's investigation or during the course of this litigation. Indeed, quite to the contrary, based on the evidence presented by defendant, it appears defendant and Campbell were forthcoming and thorough in responding to requests from the KHRC.

In sum, although Campbell's statements may not have been made with the degree of precision desired by the plaintiffs, the evidence before the court does not establish a prima facie case that Campbell acted with the requisite intent to commit perjury. Rather, the entire issue is, perhaps, more accurately characterized as the type of semantical discrepancies that frequently arise in lawsuits, and the court is unwilling to infer Campbell's intent to commit perjury on this basis alone, particularly in the absence of any corroborating evidence to raise the court's

suspicions regarding Campbell's honesty and integrity. The evidence does not support a "good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." The evidence might support a good-faith belief by a *suspicious* person, but not a *reasonable* person. Further, the court is not persuaded that plaintiffs have produced "evidence which, if left unexplained or uncontradicted, would be sufficient to carry the case to the jury and sustain a verdict" that Campbell committed perjury.[4]

The plaintiffs also cite *In re Grand Jury Subpoenas,* 144 F.3d 653 (10th Cir.1998), purportedly in support of an argument that Campbell was not entitled to assert the attorney-client privilege on behalf of defendant. In addition to the four deposition questions set forth above, defense counsel also instructed Campbell not to answer five other questions on the basis of the attorney-client privilege. The plaintiffs also seek to compel answers to these five questions on the basis that the responses are pertinent, under *In re Grand Jury Subpoenas,* to determining whether Campbell is entitled to assert the attorney-client privilege on defendant's behalf.

The plaintiffs' reliance on *In re Grand Jury Subpoenas* for this proposition is misplaced. That case involved a grand jury subpoena in a criminal case where the officer of the corporation asserted the attorney-client privilege in his *individual* capacity with respect to his communications with the *corporation's* attorneys when the corporation specifically declined to assert the privilege. *Id.* at 658. Under these circumstances, the individual officer must prove that the privilege exists on *his* behalf. *Id.*

By comparison, the present case involves the much more typical situation that occurs when a corporate defendant produces one of its representatives for a deposition. In this case, defendant produced Campbell as a corporate representative, and it can fairly be inferred that Campbell had standing to as-

sert the attorney-client privilege on behalf of the corporation. Because he asserted the privilege on behalf of the *corporation,* he does not need to prove the privilege exists in his *individual* capacity, as was the case in *In re Grand Jury Subpoenas.*

The plaintiffs also request that Horne be compelled to answer the same line of questioning as Campbell. The court will not compel such answers for the reasons described above, and also because the plaintiffs' requests to compel Horne's testimony are not ripe.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1. Plaintiffs' motions to compel (doc. 36 in *Berroth* & doc. 45 in *Brown* ) are denied.

2. The clerk shall mail copies of this memorandum and order to counsel of record for the parties.

---

4. Because the court has determined that the plaintiffs have failed to make a prima facie case of intent to commit perjury, the court need not consider whether the statements in Campbell's affidavits were actually false and/or material.